UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HAYLEY H.,                                  )
                                           )
            Plaintiff                       )
                                           )
    v.                                      )        1:25-cv-00419-JCN
                                           )
SOCIAL SECURITY ADMINISTRATION              )
COMMISSIONER,                               )
                                           )
            Defendant                       )

**MEMORANDUM OF DECISION ON PLAINTIFF'S COMPLAINT**

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act alleging a period of disability beginning August 22, 2022.  Initially, Plaintiff alleged several impairments including chronic fatigue, shortness of breath, joint pain, and leg weakness. Later, when Plaintiff requested an administrative hearing, she identified post-COVID-19 syndrome (also known as Long COVID) as an additional diagnosis and impairment.

Defendant, the Social Security Administration (SSA) Commissioner, found that Plaintiff does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities.  Defendant, therefore, denied Plaintiff's request for disability benefits.  Plaintiff filed this action to obtain judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Following a review of the record, and after consideration of the parties' arguments, the Court affirms the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the August 30, 2024, decision of the Administrative Law Judge.  (Admin. Record ("R.") at 17-26).[1]  The ALJ's decision tracks the first two steps of the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

In assessing Plaintiff's allegation that she is unable to work due to symptoms caused by Long COVID, the ALJ found that the objective medical evidence did not establish Long COVID as a medically determinable impairment.  (R. 25.)  The ALJ found that although the medical record includes a diagnosis of Long COVID, the medical record did not include imaging, testing, or signs on physical or mental status exams that would establish a medically determinable impairment of Long COVID, or otherwise provide objective support for Plaintiff's alleged Long COVID symptoms of extreme fatigue, weakness, imbalance, arthralgias, and psychiatric difficulties.  (R. 21-25.)  The ALJ deemed unpersuasive the opinions of Plaintiff's primary care physician regarding Plaintiff's disability and limitations due to Long COVID, concluding that the opinions were wholly inconsistent with the normal examinations documented in the record.  (R. 24.)  Finally, the ALJ found the opinions of the state agency consultants persuasive, observing that the consultants supported their opinions by reference to objective medical findings, and that their conclusions were consistent with the evidence in the record.  (R. 25.)

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

The ALJ ultimately determined that Plaintiff has several medically determinable impairments—obstructive sleep apnea, arthralgias (i.e., joint pain), and anxiety disorder—but that none of her impairments, singly or in combination, qualified as severe. (R. 20.) As such, at the second step of the sequential evaluation process, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act.

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (citation omitted).

## DISCUSSION

For purposes of Title II and Title XVI of the Social Security Act, the term "disability" means inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period" of at

3

least 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[2]  In this context, a physical or mental impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Consistent with the statute, implementing regulations provide that "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. §§ 404.1521, 416.921.  The Commissioner "will not use" a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment[.]"  20 C.F.R. §§ 404.1521, 416.921.  Alleged symptoms will not be found to affect a claimant's "ability to do basic work activities unless medical signs or laboratory findings" establish the existence of a medically determinable impairment.  20 C.F.R. 404.1529(b), 416.929(b); *accord* SSR 16-3p, at *3-4, 2017 WL 5180304 (Oct. 25, 2017).   In this context, signs "means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. §§ 404.1502(g), 416.902(l); *accord* SSR 16-3p, at *3, 2017 WL 5180304. Laboratory findings are "anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques."  20 C.F.R. § 404.1502(c), 416.902(g); *accord* SSR 16-3p, at *3, 2017 WL 5180304.

---

[2] SGA is defined as work activity that is both substantial (i.e., "involves doing significant physical or mental activities") and gainful (i.e., work activity performed for pay or profit).  20 C.F.R. §§ 404.1572, 416.972.

The Commissioner has issued an Emergency Message providing policy guidance for evaluating the existence of a medically determinable impairment for COVID, including long-term effects of COVID.[3]  Under that guidance, a medically determinable impairment for COVID exists when evidence from an acceptable medical source consists of a report of a positive viral test for COVID, a diagnostic test with findings consistent with COVID (e.g., chest X-ray with lung abnormalities), or a diagnosis of COVID with signs consistent with COVID (e.g., fever, cough, etc.).  The guidance provides that a positive antibody test, on its own, does not establish a medically determinable impairment of COVID because a positive antibody test might indicate that a person had a different coronavirus or received a vaccination for COVID.  The guidance also lists symptoms related to COVID, and Long COVID, but cautions that the Commissioner only evaluates symptoms resulting from a medically determinable impairment.

Plaintiff contends that the ALJ erred in her assessment of whether Long COVID was a medically determinable impairment at step two of the sequential evaluation process. More specifically, Plaintiff argues that the record includes a diagnosis of Long COVID and signs consistent with Long COVID.  Plaintiff further argues that the ALJ cannot supportably rely on the state agency consultants because the consultants did not evaluate Long COVID as an impairment and did not have the opportunity to evaluate subsequently submitted records of her evaluation at the Brigham and Women's COVID Recovery

---

[3] SOCIAL SECURITY ADMINISTRATION, *EM-21032 REV 2 - Evaluating Cases with Coronavirus Disease 2019 (COVID-19)* (Mar. 28, 2024), https://secure.ssa.gov/apps10/reference.nsf/links/03282024111904AM [https://perma.cc/JF28-GSHX] (hereinafter EM-21032).

Center.  Plaintiff contends that given the lack of expert support for the ALJ's assessment of Long COVID, the ALJ's decision is not supported by substantial evidence.[4]

While Plaintiff's argument regarding the diagnosis might have some appeal, when assessed under the relevant regulations, which were highlighted in the Commissioner's Emergency Message regarding COVID-based claims, Plaintiff's argument is ultimately unpersuasive.  As the ALJ found, the record lacks the objective medical evidence necessary to establish a medically determinable impairment of Long COVID.

Plaintiff sought medical care multiple times in June and July 2022, reporting that she had been suffering throat discomfort and shortness of breath for "a while" and leg weakness for six months; physical examinations showed clear lungs and good air flow and full strength in the lower extremities, labs were normal, a neck X-ray was normal, and a chest X-ray showed normal cardiopulmonary findings.  (R. 348-50, 356, 374, 455-61.) Because Plaintiff's oxygen saturation was 95%, she was prescribed an inhaler.  (R. 350.)

On July 21, 2022, Plaintiff followed up with her primary care provider, Nina E. Fagles, M.D.  Notes from that visit reflect the first mention of COVID in the longitudinal record, consisting of Plaintiff's report that she had COVID "early in the year" but did not have any of her symptoms "right afterwards."  (R. 379.)  At that visit, Plaintiff continued

---

[4] Plaintiff also argues that the ALJ's assessment of arthralgias was not supported by an expert opinion.  The record, however, includes support for the assessment.  *See* (R. 59-61) (opinion of Archibald Green, D.O., at initial evaluation, assessing Plaintiff's allegation of joint pain and concluding that medical evidence of record did not support the alleged degree of disability); (R. 73-75) (opinion of Abraham Colb, M.D., at reconsideration, evaluating Plaintiff's allegation of joint pain and concluding that medical evidence of record did not support the alleged degree of disability and noting that arthralgias was not supported by objective findings).

to complain of "air hunger" and reported that her leg weakness had been going on "for a year or so" but had recently gotten worse. (*Id.*) Dr. Fagles could not palpate a deep pulse in the right leg and noted that Plaintiff's right leg seemed weaker than the left; she referred Plaintiff for exercise testing on a treadmill. (R. 378-79.) Exercise testing revealed "normal phasic blood flow to bilateral lower extremities to the level" of the metatarsals, along with "normal perfusion bilateral lower extremities pre and post exercise." (R. 380-81.)

Plaintiff saw Dr. Fagles again in August 2022, when she continued to report fatigue, along with back, neck, and joint pain. (R. 382.) Physical exam findings were largely normal. (R. 383.) At that point, Dr. Fagles ordered pulmonary function tests and a sleep study and listed chronic fatigue and Long COVID as possible diagnoses for Plaintiff's reports of fatigue. (R. 382.) Dr. Fagles deferred a referral for further exploration of the possible diagnoses until after pulmonary function tests were completed. The subsequent pulmonary function tests were normal; the sleep study revealed mild obstructive sleep apnea. (R. 385-87, 422.)

In October 2022, Dr. Fagles questioned whether Plaintiff's fatigue was due to sleep apnea or Long COVID or possibly fibromyalgia; the treatment plan was to "tease out what treating the sleep apnea will do for her symptoms." (R. 397.) Treatment notes from Dr. Fagles' office in November 2022 reflect Plaintiff's subjective reports of her symptoms and largely normal physical exam findings, including intact strength in the lower extremities. (R. 428.) Treatment notes from Dr. Fagles' office in January 2023 similarly reflect Plaintiff's reported symptoms and that Dr. Fagles planned to try to find Plaintiff a clinic to evaluate "CFS vs. long Covid" after Plaintiff had used an airway pressure machine for at

7

least a month.  (R. 403.)  In May 2023, at a follow-up visit with Dr. Fagles, Plaintiff reported neck and arm pain, and that using the BiPAP had not helped with her fatigue.  (R. 406-07.)  At that point, Dr. Fagles posited a diagnosis of post-COVID chronic fatigue and referred Plaintiff to a Long COVID clinic in Boston.  (R. 406.)

In October 2023, Plaintiff was evaluated by Hilary J. Goldberg, M.D. at Brigham and Women's COVID Recovery Center.  (R. 497.)  Dr. Goldberg found that Plaintiff had diminished breath sounds on examination, but all other physical and mental exam findings were normal.  (R. 499.)  Dr. Goldberg described Plaintiff as a "27 y.o. female with suspected Post-acute Sequalae of Covid" and then listed Plaintiff's reported symptoms, including fatigue and muscle weakness."  (R. 499.)   She also noted that Plaintiff's symptoms and pulmonary function tests were "not suggestive of airway[] obstruction" but were "more consistent with dysautonomia."  (*Id.*)  During the Six Minute Walk Test, Plaintiff was able to walk for the full six minutes, 52% of the predicted distance, without stopping and without visible signs of shortness of breath or chest discomfort, and with no evidence of desaturation.  (R. 510.)

The ALJ surveyed the records of Drs. Fagles and Goldberg—along with many other treatment records—and supportably found that the evidence did not establish Long COVID as a medically determinable impairment.  Although Dr. Fagles diagnosed Plaintiff with Long COVID, she did not identify any signs (i.e., anatomical, physiological, or psychological abnormalities shown by medically acceptable diagnostic techniques) that supported the diagnosis.  Notably, Plaintiff has not identified any signs or diagnostic findings in the medical record supporting Dr. Fagles' diagnosis.  Instead, Plaintiff appears

8

to equate symptoms with signs.  For instance, in her reply memorandum, Plaintiff lists various symptoms and concludes that "[t]he record is replete with evidence of these signs." (Reply at 4, ECF No. 22.) The regulations, however, provide that signs are distinct from symptoms.  As noted above, signs "means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. §§ 404.1502(g), 416.902(l); *accord* SSR 16-3p, at *3, 2017 WL 5180304.  Under the Commissioner's Emergency Message, any diagnosis of COVID or Long Covid must be accompanied by signs, not symptoms, of COVID.  Without objective medical evidence in the form of signs or findings, Dr. Fagles' diagnosis and Plaintiff's subjective symptoms are insufficient to establish Long COVID as a medically determinable impairment.  *See* 20 C.F.R. §§ 404.1521, 404.1529(b), 416.921, 416.929(b); *see also* EM-21032 ("We need objective medical evidence from an acceptable medical source (AMS) to establish the existence of an MDI for COVID-19, including long-term effects of COVID-19, which means signs, laboratory findings, or both[.]  We establish an MDI for COVID-19 when evidence from an AMS indicates . . . [a] diagnosis of COVID-19 with signs consistent with COVID-19[.]"); *id.* ("Follow existing policy for establishing an MDI[.]"); POMS DI 24501.021 ("Symptom evaluation is a part of the medical evaluation process; however, symptoms alone are not enough to establish the existence of . . . a medically determinable impairment[.]"); *cf. Rose v. Shalala*, 34 F.3d 13, 17-19 (1st Cir. 1994) (concluding that ALJ erred in finding that claimant had "possible" CFS given uniform medical opinions either diagnosing claimant with CFS or declining to do so but finding that claimant had

9

symptoms fully consistent with CFS and indicating that the "deciding factor" in the case was the "nature of the illness" particularly given SSA policy concerning CFS which did not require objective medical evidence but instead contemplated adjudication based on the totality of the evidence, including "symptoms, signs, and laboratory findings" as well as onset, duration, severity, and RFC).[5]

The records from Dr. Goldberg's office also do not include the requisite objective medical evidence. Dr. Goldberg's treatment notes suggest that further testing (a level 3 CPET) would be required to confirm a diagnosis if conservative treatment did not improve Plaintiff's symptoms, but the record does not contain evidence that such testing occurred, or otherwise reveal the results of any testing.[6] Moreover, even if the notes from Dr. Goldberg's office could be reasonably construed to include a definitive diagnosis with

---

[5] In limited circumstances, the Commissioner has determined that a medically determinable impairment can be established with a diagnosis and without signs or laboratory findings. For instance, in Social Security Ruling 12-2p, the SSA described the evidence that could establish that a person has a medically determinable impairment of fibromyalgia, which may take the form of a diagnosis of fibromyalgia and evidence that the claimant has (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause these repeated manifestations were excluded. SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012). Consistent with this guidance, a number of courts have recognized that "fibromyalgia often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms, and that the hallmark of fibromyalgia is therefore a lack of objective evidence." *Somogy v. Comm'r of Soc. Sec.*, 366 Fed. Appx. 56, 63 (11th Cir. 2010) (quotation marks omitted) (collecting cases).

[6] Plaintiff suggests in her brief that further testing was scheduled to occur after the administrative hearing in this matter. As the Defendant points out, Plaintiff could have offered the results of any such testing in connection with her request for review by the Appeals Council. *See* 20 C.F.R. § 404.970 (explaining when Appeals Council will consider additional evidence). She also could have asked the ALJ to hold open the record to add the results of that testing. *See Nicole C. v. O'Malley*, No. 2:23-cv-00415-NT, 2024 WL 3249501, at *3 (D. Me. July 1, 2024) (acknowledging that, under 20 C.F.R. § 404.935, a claimant must ordinarily inform an ALJ of any written evidence at least five business days before the administrative hearing, but that SSA policy provides that "evidence related to ongoing treatment would likely qualify as an exception to the rule").

"Post-acute Sequalae of Covid," as explained above, the diagnosis alone would not establish a medically determinable impairment.  *See* 20 C.F.R. §§ 404.1521, 416.921. Further, Dr. Goldberg's suggestion that Plaintiff's pulmonary function tests were somewhat "consistent with dysautonomia" is also insufficient.  Dr. Goldberg's treatment notes do not reflect that she viewed the results of the pulmonary function tests as a "sign" supporting a diagnosis with COVID or Long COVID—i.e., a physiological abnormality, shown by a diagnostic technique, observable apart from Plaintiff's statements about her symptoms.  *See* 20 C.F.R. §§ 404.1502(g), 416.902(l).  If she had, presumably, the level 3 CPET would not have been contemplated as a next step.

Plaintiff nevertheless maintains the ALJ erred because the record lacks an expert opinion that challenges the Long COVID diagnosis because the state agency consultants did not assess whether Plaintiff suffers from Long COVID.  Plaintiff's argument is unavailing.  First, unlike with the assessment of a claimant's residual functional capacity, an ALJ does not necessarily need an expert opinion to evaluate the existence of a medically determinable impairment at step two of the sequential evaluation process.  *Cf. Nicole C.*, No. 2:23-cv-00415-NT, 2024 WL 3249501, at *5 (quoting *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 17 (1st Cir. 1996) the proposition that "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person" and concluding that an ALJ may not "translate raw medical data into an RFC assessment").  More importantly, the ALJ did not find that Plaintiff lacked a COVID diagnosis, nor did she challenge Plaintiff's treating physician's qualifications to make the diagnosis.  Rather, the ALJ determined that the record lacks any "signs" of a

11

COVID-based impairment as required by the pertinent regulations.  Particularly on this record where neither Plaintiff nor the medical experts identified any "signs" supporting the Long COVID diagnosis, the ALJ could supportably make the ultimate determination without an expert opinion.  *See generally Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); *see also Roxauna M. v. Berryhill*, No. 1:17-cv-00350-NT, 2018 WL 3493075, at *3 (D. Me. July 20, 2018) (determining that ALJ supportably found that claimant did not have medically determinable impairments of vertigo or migraine headaches where the evidence of record, including note from neurologist who examined claimant, "did not document the requisite medical signs and laboratory findings").

### CONCLUSION

Following a review of the record, and after consideration of the parties' arguments, the Court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.  Accordingly, the Court affirms the administrative decision.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 2nd day of July, 2026.

12